Good morning. I apologize for my attire. I didn't realize you didn't have casual Thursday here. Packing didn't work very well last night. You allowed one error at least when you come to the court, so you've now had two won. Yeah, I appreciate that. I'm here on Lamont Marlow Vanderhorst's behalf. Mr. Vanderhorst was charged and convicted in 2007 of conspiracy to distribute and possession with intent to distribute five kilos of cocaine. He pled guilty to that charge and the judge ordered that a PSR be prepared in his case. The PSR, the probation officer determined that he was a career offender based on two controlled substances offenses. One was a case out of New Jersey from 1997 for distribution of dangerous drugs. The other was related to a series of convictions from Wake County, North Carolina. These were all related cases. The first conviction was trafficking in heroin. Why is it a failure of you not to challenge the two untainted 1991 convictions that your original sentencing not fatal to your request for relief under Rule 36? The reason it wouldn't is because the council would probably felt that that would have been futile based on that third conviction, which clearly, if it was correct, would have constituted a drug offense under the sentencing guidelines. So it's not a situation, I wouldn't have done that if I was him to make a, what I do would be a futile argument, maybe upset the judge when I'm trying to get a lower sentence for my client. So in any case, the third count that conspiracy... So you have three qualifying predicate offenses that are untainted here? No, no, I don't think there are three qualifying offenses under North Carolina. First of all, I don't think that the first two offenses, the correct listed offenses, trafficking in heroin by possession and trafficking by transportation, constitute controlled substance offenses under the sentencing guidelines. It would have to be a situation where it was manufacturing, importation, exportation, distribution, or dispensing, or possession of controlled substance with intent to manufacture, import, export, distribute, or dispense. And under the elements of North Carolina law on those trafficking offenses, none of those elements appear. You don't have to have those. Simply possessing the drugs is enough to establish the offense of trafficking by possession. Simply transporting the drugs is enough to constitute trafficking by possession. So I believe those two cases are not controlled substance offenses under the sentencing guidelines because they don't have those elements under North Carolina law. So to proceed... So are you really asking for a resentencing? Yes, ma'am, I am. Based on Rule 36? Based on Rule 36, Your Honor. How is there authority in Rule 36 for us to grant a resentencing? Well, Your Honor, I'm basing my argument, as you know, on the Powell case. And in Powell, which unfortunately was an unreported case. You mean the unpublished case of Powell? Yes, sir. Yes, sir. We won't get very far on that. I know. I know, but I'm just looking at the analysis that the court applied in that situation. They actually noted one of the treatises that was cited by the Sixth Circuit case in a very similar situation where it denied the kind of relief that we're talking about. And there were 21 cases cited by the government that were decided before Powell was decided. And presumably the court and U.S. attorney were aware of those cases and the court decided to go a different way. The earliest of those cases was the 1981 case. There's a 1984, 1985, and then several from 2000s. So I believe the court did know and understand that the error had to be not judicial or substantive, but error must be purely clerical. And that's what they held in this situation. But the trial counsel never made this argument that you're making today. No, sir. And the problem is, in order to know that there was a problem with that. That's a little different than Powell, isn't it? Well, it's different in that the government conceded when it was brought forth that there was an issue. But in Powell's case, the attorney later found, four years later after the sentencing, that there was an issue with one of those convictions. To say that the trial attorney... So you're asking us to even extend Powell? Well, I don't think it's really extending. I think it's on all fours with Powell. I believe it's the exact same situation, except you've got a different state. He was from Maryland and Mr. Cummings from North Carolina. Both had clerical errors that were found to be wrong that would have affected the sentencing and then were later corrected. Proceed. Okay. How do you reconcile our decision in Goodwin then with Powell? Kudiman and... Not Kudiman, Goodwin. Goodwin. I was thinking that was before Powell, Your Honor. I may be wrong on that. Well, whether it's before or after, it's a published opinion. Yes, sir. Do you have anything to say in response to that? No, sir. We rise and fall on Powell. Powell is what we believe should apply in this case. We think it was a correct decision for Powell and it would be an appropriate decision for Mr. Vanderhorse. It would be. But you know the difference with the Powell case is you had two additional predicate offenses that were not affected by the clerical error. Right. So that's the problem you've got here. I mean, Powell seems like it would be a good way to go on it, but that's a distinguishing feature in this case. Again, if I were a trial counsel in that situation and I'm facing a PSR that shows that... We don't give the defendant the benefit of, well, your lawyer here did something different. Now, when it comes up here, you've got a different lawyer. It's not you. It's what was actually being done there. Yes, sir. I understand what you would have done. You probably... Yeah, I agree. You probably would. I can believe that. But it wasn't done. You've got to live with what wasn't done, not what you would have done. Yes, sir. Right? Yes, sir. So what do we do with it? I mean, sort of a conundrum in the way of, you're right, I think you could be on all fours with Powell, but you've got that distinguishing feature in this case. Two offenses, predicate offenses, unobjected to, and which were not affected by the clerical error. Well... And we are under Rule 36. Yes, sir. See, there's the limiting part right there. We're under Rule 36. It just back points out. This is not a first-time review. True. We're not exactly sure because the probation officer, I don't think he identified the specific offenses. He just said that there were these convictions. And I may be incorrect on that. But again, those offenses would not have been drug offenses under the sentencing guidelines. The problem is Rule 36 allows us to correct clerical errors. Yes, sir. You've got two predicate offenses, unobjected to, unaffected by, clerical errors. And you're asking for relief under Rule 36. You see the problem? Yes, sir. How do we fix it? I mean, I don't know how we fix that. The only thing I can say is, Judge, that those would not have counted. But Rule 36, what do we just, we agree. Yes, sir. That's there to fix clerical errors. Those two do not have clerical errors. What do we do? Well, I would obviously ask for a remand to the District Court for correcting the PSR in the case, which still hasn't been done. And if you did, you still got the others. And he'll say, well, you got the other offenses already there. Nothing counts. Well, at that point, if once the PSR is corrected, I believe you'd be entitled to a new sentencing and objections could be raised. Well, you say the PSR wasn't corrected, but Judge Hudson did acknowledge the error in his opinion. Why isn't that good enough? The PSR, well, first of all, as the court may know, PSRs are probably the most important document that occurs in a criminal case after conviction. It's what is used to determine the person's sentence. It's what's to determine their supervised release, if there's any restitution involved. It follows them throughout the prison system. It determines what their classification is, where they're going to be housed, the situation of the housing. As you say, so it is very important. And the defendant and his attorney both acknowledged that they read the PSR and they had no objections to it. Yes, ma'am. So what this is, maybe could have been an ineffective assistance claim, but otherwise, that's a good point, Your Honor. But what that means is, is that anyone who is someone charged with a career offender is going to have to go physically go to a courthouse and examine files and make sure that those are correct. Mr. Vanderhorst's attorney, I believe, was from the Richmond area. Simply calling the Wake County clerk's office and saying, is this conviction correct? They're going to type it into a computer and they're going to say it is. He could have asked his client. Well, it's at that point that had been the passage of 16 years, 17 years. He may not have remembered. He may not have known. And he probably did ask him. I mean, that would be normal process for an attorney. But he reviewed the PSR. Yes, ma'am. That's correct. Because it's very important, as you say. It is very important. Yes, ma'am. But again, the standard is it's going to create, if he is denied relief, it is going to mean that defense attorneys on these cases are going to physically have to go to courthouses and examine files. I've had clients from New Jersey, California, Texas. I assume that my court, my judges aren't going to let me travel on those cases, but I'll have to file motions to get money from local counsel to go and examine those files and make sure that it's correct. It's going to be an incredible burden on the CJA panel. Funding. All right. If you have anything else to add. Thank you, Your Honor. Thank you. May I please report? My name is Michael Moore, and I represent the United States in this matter. In 2007, the district court sentenced Mr. Vanderhorst to a 327-month term of imprisonment, applying a career offender enhancement based on four state drugs. Is it dispositive that we're under Rule 36 and there are two predicate offenses unobjected to, which there were not clerical errors in this case? Yes, Your Honor. Speak to that. Well, there were two convictions in North Carolina and one in New Jersey to which defense counsel in the underlying case lodged no objection whatsoever. I disagree with counsel's assertion that there was no way through the exercise of due diligence that he could have researched those convictions or researched North Carolina law on those convictions. This wasn't the counsel. Yes, Your Honor. I completely agree. Mr. Edwards says that the counsel would not have had any incentive to do that given the state of the record because there were other offenses that satisfied the enhancement. Well, I think that that's speculation. And the way that you would make a record on that is through a 2255 motion and a hearing on that if the district court felt that there was a hearing. But Rule 36 is not the vehicle through which to make those types of corrections or changes to a sentence. In fact, both this court and every other federal circuit that has determined the issue in any sort of published opinion has stated very clearly that Rule 36 is confined strictly to the correction of clerical errors and not to the correction of legal or alleged legal errors or substantive issues. In fact, the Seventh Circuit has specifically stated that in this specific context, in the Williams case, that where there's an attempt to basically get a redo on a characterization of a conviction for a career offender enhancement, that Rule 36 completely disallows that. So in that respect, the Powell case upon which counsel relies completely is really an outlier. And to be fair to the Powell panel, this court had not actually decided the Goodwin case when that case was decided. And prior to Goodwin, there was very, very little discussion in this circuit about 18 U.S.C. Section 3582C, which Rule 36 really has to be read in conjunction with. In fact, Rule 36 cannot trump that statute which was passed by Congress and signed into law by the President. And as this court affirmed in Goodwin, 3582C provides that the only circumstances under which a court can modify a previously imposed term of imprisonment are a motion filed by the Bureau of Prisons, retroactive amendment of a guideline range by the Sentencing Commission, or express permission via Rule 35 or some other statute. And none of those conditions exist here as the district court noted. And therefore, the district court quite properly refused to read Rule 36 in a way that would allow it to provide relief to a defendant that Congress didn't specifically authorize. And that's actually, I guess, Rule 3582C trumps Rule 36 in this context, certainly. Moreover, the structure of Rule 36 would suggest pretty strongly that it doesn't provide relief here. In fact, it's important to note that Rule 36 allows correction of clerical errors without any notice to the parties. And it would be odd indeed if that vehicle was used to, in essence, get a redo on sentencing where a sentencing involves briefing of issues prior to actually going into court. Argument on issues like here, the career offender enhancement, which would also have to involve litigation of issues under North Carolina law that the government cites in its brief. And then finally, allowing the defendant a chance to allocute. So a defendant should spend an additional 15 years in prison solely because a clerical error in a state system exists where it would be very difficult for the counsel to find? Well, I don't submit that it would be very difficult for the counsel to find. In fact, it's generally the practice in our court for the probation officers to get copies, certified copies of conviction orders. So if counsel requested copies of those conviction orders, this issue could be resolved simply by looking at those and by being cognizant of and familiar with state law, which is just a general part of practicing in federal court, particularly with respect to the application of these enhancements. But the government's position is that Rule 36 is not the vehicle here. There may well be other vehicles if indeed this is error. What vehicles would exist? Well... It would be 2255, would it? Probably not, given the passage of time. One that comes to mind immediately is some sort of executive relief through sentence commutation. I don't know that that's... Well, actually, I know that that has not been attempted here. That's not our venue. It is not, Your Honor. It is not, Your Honor. But the point that I'm trying to make is that there are other vehicles through which this might be attacked, and it's not the government's burden to say what other vehicles there are. The issue, the limited issue before the district court and the limited issue here is whether Rule 36 is the appropriate vehicle. And the government's... To me, there's at least a very strong, colorful situation of a wrong here in terms of what's going on. But your point is well taken that procedurally when we're going to Rule 36, depending on how we view that rule, we may be limited procedurally in how we can even address that issue. So it doesn't come up. Is that where you're going with this? Yes, Your Honor. Okay. What about the argument that at least with respect to the strict correction of the PSR, that that's never happened in this case, just correcting the record to reflect the proper offense? Well, the government's reluctant to adopt any portion of the Powell opinion or endorse any portion of it. It would certainly be less... It would certainly be more in accordance with Rule 36 in that that clerical error could be corrected, and that's what the Fifth Circuit did in the Mackey case. However, I think that in terms of correcting clerical errors in the record, it really should be limited to corrections of inconsistencies between the record in this court and what's reflected in court documents. I think that if you take the Powell Court's reasoning and apply it in other contexts, you could have a situation, for instance, where a defendant gets diagnosed with bipolar disorder 10 years after the fact, and he's trying to get his PSR corrected because it reflected that he didn't have any mental health problems prior to that. And I'm concerned that even allowing the sort of limited relief of correcting the PSR here, that that could open the door to further uses of Rule 36. I mean, that's a good example, but that's not this case. I mean, the historical record is what it was, right? Yes, Your Honor. That hasn't changed. Yes, Your Honor. And your colleague over there has expressed concerns about the potential future ramifications of having this incorrect PSR following his client around for the rest of his life. Well, that would certainly be less disruptive, and you could square that with Rule 36 making that limited correction and adopting Powell to that extent, but certainly not allowing a complete redo on sentencing. For the reasons that I've stated, if there are no other questions, I would ask that the Court affirm the District Court's decision. Thank you. A few minutes of rebuttal, if you like. Very briefly. Mr. Moore's point that counsel could have requested a copy of the record of conviction from the probation officer. It appears that the probation officer didn't have it because they put in the incorrect information that could only be obtained through an NCIC. So apparently they didn't have those documents. And I'm not familiar with the practice that that occurs. I've been doing federal cases now 23, 24 years, but I'm not sure that a probation officer is going to take that step and get it for me. I think they're going to say, you need to look at the record yourself. And since his counsel had no reason to suspect that there was error here, he's not going to take the three- to four-hour round trip down to Wake County, North Carolina, pull the files, and take a look at it. And the probation officer is making a representation to the Court. Yes, exactly. And the Court, it would seem, would want to ensure that this is what it says it is, and he's ensuring that's what it is. Absolutely, Your Honor. I'm just thinking practically. What does that mean for defense counsels to have to, on every case, go behind the probation officer? Which, I mean, to some extent you have to kind of look, but if you did that in every criminal case, that should be practical. I'm just trying to understand how that works. It's going to be a lot of work. And to the Court's point about the judge relying on the probation officer's work, every time, I've probably handled 100 cases in district court. I go to every pre-sentence interview with my clients. And 90% of the time, the first thing the probation officer says is to the client, I don't work for the government, I don't work for your client, I work for the Court. My job is to report back to the Court. Okay. It's a very important role. If there are no further questions, Judge. Thank you both for your comments. We'll come down to brief counsel and move to the last case. Thank you, Judge.
judges: James A. Wynn Jr., Albert Diaz, Stephanie D. Thacker